**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Catherine C. Kang,

      Petitioner,

-V-                                     Case No. 2:04-cv-801
                                                   JUDGE SMITH
                                                   Magistrate Judge Abel

The Honorable James Green, et al.,

      Respondents.

## OPINION AND ORDER

      Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  She asserts that the Fifth Amendment protection against double jeopardy bars her retrial on a charge of vehicular manslaughter because the state trial court improperly granted the prosecutor's motion for a mistrial.  The Magistrate Judge issued a comprehensive report and recommendation, recommending, *inter alia,* that the Court grant the writ as to petitioner's double jeopardy claim. Respondent filed timely objections to the report and recommendation.  For the reasons that follow, the Court  overrules all of respondent's objections, adopts the Magistrate Judge's report and recommendation in its entirety and grants the writ of habeas corpus.

1

## I.  Background

### A.  The parties

Petitioner Catherine C. Kang is an individual citizen of the State of Ohio.  Respondent the Honorable James Green is a Judge in the Franklin County, Ohio Municipal Court.  Respondent Michael A. Pirik was the Clerk of the Franklin County, Ohio Municipal Court.  The Magistrate Judge recommended that Pirik be dismissed from this action.  Petitioner did not object to the Magistrate Judge's conclusion.  The Court dismisses Pirik from this case.

### B.  The accident

This case arises from a car accident that occurred in evening rush hour traffic on July 1, 2003 on Interstate 670 in Franklin County, Ohio.  Petitioner was driving a Toyota Siena minivan eastbound on 670.  The decedent, Joanne Thompson, was driving a Geo Tracker in front of petitioner.  Traffic slowed.  The front left of petitioner's mini-van struck the right rear of Thompson's Tracker.  The Tracker traveled to the left and hit a concrete highway divider, and flipped over more than once.  Thompson was ejected from the Tracker, and the Tracker landed top down on top of her, crushing her to death.

### C.  State court proceedings

On July 29, 2003, petitioner was charged with vehicular manslaughter in violation of Ohio Rev. Code § 2903.06(A)(4) for causing Thompson's death by failing to maintain assured clear distance.  The case was assigned to respondent Green.

Prior to trial, the prosecutor moved *in limine* to exclude evidence that Thompson was not

wearing her seatbelt at the time of the accident.  Such evidence is inadmissible under Ohio Law.

Ohio Rev. Code § 4513.263(F)(1).  Petitioner objected, arguing that Thompson's failure to wear

her seat belt was germane to the issue of proximate cause.  Judge Green granted the motion to

exclude.  The parties also agreed to three stipulations.  Judge Green read the third stipulation to

the jury as follows:

> The third stipulation, third and final stipulation would be that the injuries which
> caused Joanne Thompson's death were those she sustained when the 1992 Geo
> Tracker she was operating was involved in a collision on Interstate 670 at
> approximately 5:32 p.m.

Tr. at 179-80.[1]

The trial commenced on June 28, 2004.  During opening statements, petitioner's attorney

stated, "[t]his woman tragically comes out of her vehicle and is crushed by her own car."  Tr. at

7.  On direct examination, the prosecution's first witness, Jeffrey Laine, said that Thompson

"was thrown out of the vehicle.  The vehicle rolled over on top of the driver."  Tr. at 12-13.

Laine further testified that he helped roll the Tracker off Thompson following the accident.  Tr.

at 13.  On cross-examination, Laine confirmed that Thompson came out of the Tracker after it hit

the barrier.  Tr. at 21.  Deputy Steve Fickenworth testified on direct that after he arrived to

investigate the accident, he was told that the Tracker had been rolled off the person trapped

underneath it.  Tr. at 50.  Deputy Fickenworth confirmed this on cross-examination.  Tr. at 113.

The prosecution's last witness, Douglas Shoemaker, testified that after the Tracker hit the wall,

he saw "the driver's hands were airborne."  Tr. at 166.

After the defense rested, petitioner's counsel called Farhad Khalilpour, who also

witnessed the accident.  The following colloquy took place between defense counsel and

---

[1] The parties did not stipulate that Thompson died as a result of being crushed by her car.

Khalilpour:

> Q.    Okay.  Will you describe for the ladies and gentlemen of the jury what you saw out there on that freeway at that point in time?
>
> A.    Well, it was rush-hour time.  We were all traveling, I would say, probably between 45 to 55, 60 miles an hour, just like everybody does during rush hour.  There was a white vehicle in the left lane.  The distance between me and what occurred is probably from here and the lady sitting right there.  It was very close.
>
> There was a white vehicle, then there was the Tracker that, I think, was white as well.  Then there was the black Sienna.  We were traveling 55 miles an hour and, all of a sudden, everything came to a stop, as far as the traffic that was stopped in front of us.  The next thing I see is the Tracker slamming on its brakes and veering to the left, trying to avoid the car that was stopped and the rest of the traffic.  And, in doing so, she went to the left, and she was still rolling towards the median, and the black Sienna did the same thing–like everybody else, we were all slamming on our breaks–and happened to tap the back end of the Tracker.
>
> Q.    Go ahead.
>
> A.    Do you want me to explain the whole thing?
>
> Q.    Yes, just keep going.
>
> A.    After she tapped the back of the Tracker, the Tracker just went forward. *She did not have her seat belt on, I think, which is what caused her to come out of the window, out of the passenger window.*

Tr. at 185 (emphasis added).  The prosecutor immediately requested a mistrial "[o]r, as an alternative, a specific curative instruction on the extensive law present... that they cannot consider that for any purpose."  Tr. at 186.  After questioning defense counsel about his contacts with Mr. Khalipour and the information the prosecutors gave him about Khalipour, the trial court said:

> I'm concerned that without having spoken to the witness prior to him testifying, they are not aware of the Court's ruling.

4

MR. THOMAS TYACK [Defense counsel]: That's true.

COURT: They don't know what limitations are placed on what they can and cannot offer. And, if you are going to proffer a witness, in light of the Court's ruling, I think it's incumbent upon you to make sure the witness knows there's certain areas they have to stay away from. As Miss Weinberg correctly indicated, I would expect the State to do that as well as if I had ruled in your favor on a motion *in limine*.

The bell has been rung, and I'm not quite sure if we can unring the bell by way of a curative sort of instruction. I mean, if it's agreed, we can attempt to do that, but I'm not sure how effective that's going to be if the goal was, by way of my ruling, to keep the information about whether the decedent was wearing a seat belt or not.

***

Prosecution team, you have requested initially that the Court declare a mistrial. You have requested, in the alternative, that the Court give the jury some sort of curative instruction.

Is it your request, initially, that the Court declare a mistrial?

*Id.*, at 191-92. The prosecutor then asked for a five minute recess. The trial court again

admonished defense counsel for failing to advise Khalilpour that he was not permitted to testify

that the victim had failed to wear her seat belt:

COURT: I don't have an issue with your tactical move or the sequential order in which you are calling your witnesses. When you put a witness on who's a non-lawyer, non-legally trained – We knew we had the motion *in limine*. We knew there was a sensitive issue we had to stay away from. That's a witness that needed to be prepared, of all the witnesses that need to be prepared.

MR. THOMAS TYACK: I should have asked for a recess.

COURT: This was a witness that needed to be prepared. I could see that coming. Had I known he was not prepared and forewarned to stay away from that area –

MR. THOMAS TYACK: I did introduce myself and explain to him that we were calling him as a witness. I did not explain to him your instructions. I will take responsibility for that. I apologize.

5

[PROSECUTOR]: Can we take a time out?

COURT: Let's do that.  Let's take five.

*Id.*, at 194-95.  After a recess, the prosecutor repeated her request for a mistrial:

. . . The testimony of the witness, solicited in the manner that it was solic-ited, and in direct contravention of this Court's order, did irreparable harm to the State's case for the following reasons: As I stated, it's directly in contravention of the Court's order, but, more importantly, it was the heart of the matter that was being litigated in this particular trial.

The issue, in this case, was never death itself or if there was an accident or identity.  The issue in this case was proximate cause.  Was the death the proxi-mate result of the defendant's action?  That was the sole contested issue in this case.  And the witness' statement, you know, she wouldn't have died if she was wearing a seat belt, words to that effect, directly to the jury, the issue that's being litigated, it's highly prejudicial.

Secondly, the information came not from the State's witness nor as a result of any State questioning or cross-examination.  The statement came from a de-fense witness . . . .

. . . [A]nd a five-minute recess would have been in order, and would have been granted to apprise the witness of this very important ruling.  I don't believe that [defense counsel] purposely did this. . . .  However, it was their obligation to affirmatively go forward and apprise this witness of this ruling of the Court for this very reason.  And whether this witness came to them at the 11th hour or whether they have known about that witness for many months, as they have known about them, it became their obligation the minute they put him on the stand.

. . . I regret having [to move for a mistrial] . . . , but I don't feel we can unring the bell.

*Id.*, at 196-98.

Defense counsel argued against a mistrial:

With regard to the fact that the man made a statement, he absolutely did.  The court would rule the question I asked just an open-ended question.  Tell me what you saw.  I was trying to do it that way.  I don't feel that a mistrial is necessary in this case.  I think the jury could be instructed to disregard that last statement.  I will make sure... he doesn't talk about seat belts anymore and let him finish his

testimony.

*Id*., at 200.  The trial court granted the motion for a mistrial, stating as follows:

> It's times like now that I find myself wishing that it were true that all judges are endowed with the wisdom of Solomon and can make great decisions for the good of all. Recognizing that is not true, I consulted with our director of legal research as well as two of my colleagues on the bench, just trying to elicit some feedback from them as to what may be the best way to approach this.
>
> And I, too, do not wish to have the last two and a half days go for naught, but it was suggested, and almost a consensus, that in fairness to both parties, that we keep this matter pure based on the court's ruling, and declaring a mistrial would probably be the most appropriate way to proceed.  I'm not excited about doing that.
>
> For what it's worth, Miss Kang, I want to put you in the best position possible to put this matter behind you and move on with your life, but I do feel somewhat compelled, at this point, to declare a mistrial.  That's what I'm going to do, and I will note it's over the objection of  defense counsel.

*Id.*, at 200-201.  Petitioner then filed a motion to bar retrial on double jeopardy grounds.  The trial court conducted a hearing on August 2, 2004, during which the prosecution presented argument based on relevant U.S. Supreme Court precedent concerning the issue of double jeopardy following a mistrial.   The trial court denied petitioner's motion.  The instant federal habeas action followed.


## II.  Magistrate Judge's report and recommendation

The Magistrate Judge issued a comprehensive report and recommendation on June 15, 2005.  The report and recommendation addressed four broad issues: (1) whether Pirik was properly named as a respondent in this case; (2) whether petitioner is "in custody" for purposes of 28 U.S.C. § 2254(a); (3) whether there was manifest necessity for the mistrial; and (4) whether the trial court violated petitioner's constitutional rights by excluding evidence that

Thompson was not wearing her seatbelt at the time of the accident.

As to the first issue, the Magistrate Judge concluded that Pirik is not a proper party to this habeas proceeding, and therefore recommended that he be dismissed.  With regard to the second issue, the Magistrate Judge found that petitioner is in custody.  In reaching this conclusion, the Magistrate Judge noted that petitioner has no state court remedies for her double jeopardy claim, and that if federal habeas relief is not available, petitioner may be retried in violation of her Fifth and Fourteenth Amendment right not to be placed twice in jeopardy for the same offense.

On the third issue, the Magistrate Judge held that the state trial court's decision denying petitioner's motion to preclude her retrial based on double jeopardy was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  In essence, the Magistrate Judge found that manifest necessity for a mistrial did not exist in this case.  The Magistrate Judge based this finding, in turn, upon two conclusions: the jury had already heard argument and uncontroverted evidence from which they would inevitably have concluded that Thompson had not been wearing her seatbelt; and a curative instruction linked to the standard charge on causation would have ensured a fair trial for the prosecution.

With respect to the fourth issue, the Magistrate Judge ruled that to the extent petitioners raises a state law evidentiary issue, the issue is not cognizable in habeas corpus.  The Magistrate Judge concluded in the alternative that to the extent petitioner raises a federal constitutional issue, the issue has not first been presented to the state courts as required by 28 U.S.C. § 2254(b)(1) and (c).

### III.  Respondent's objections

Respondent objects to the Magistrate Judge's conclusion that petitioner is in custody for purposes of federal habeas corpus.  Respondent also objects to the Magistrate Judge's conclusion that manifest necessity did not exist for granting the prosecution's motion for a mistrial. Respondent argues that the Magistrate Judge misinterpreted facts.  Specifically, respondent maintains that the Magistrate Judge erroneously concluded that the parties stipulated that Thompson died as a result of being crushed by her car.  He also contends that the Magistrate Judge erred in concluding that the jury would "inevitably" have inferred from evidence presented by the prosecution that Thompson was not wearing her seat belt.  In addition, Respondent argues that there was no evidence in the record to support the Magistrate Judge's conclusion that Thompson was crushed to death.

Respondent further asserts that the Magistrate Judge did not limit his review of the trial court's decision to the standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  In essence, respondent argues that the Magistrate Judge incorrectly based his recommendation that the writ be granted solely on his finding that the trial court's decision to grant the mistrial was mistaken.

### IV.  Standard of Review

A Magistrate Judge's report and recommendation that is dispositive of a claim or defense is subject to *de novo* review by the district court in light of specific objections filed by any party. 28 U.S.C. §  636(b)(1); Fed.R.Civ.P. 72(b); United States Fidelity and Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1088 (6th Cir.1992); Thornton v. Jennings, 819 F.2d 153, 154 (6th

Cir.1987). The *de novo* review is constitutionally and jurisdictionally mandated under Article III

of the Constitution. See Flournoy v. Marshall, 842 F.2d 875, 878-79 (6th Cir.1988).

Reconsideration of a magistrate's report and recommendation is governed by 28 U.S.C.

§636(b)(l).  According to its provisions, a judge may assign a magistrate the responsibility of

making proposed findings of fact and recommendations for the disposition of certain

"dispositive" motions, including motions to dismiss.  28 U.S.C. §636(b)(l)(B).  Should a party

object to these proposed findings and recommendations, the District Judge must make a *de novo*

determination on the contested portions.  28 U.S.C. §636(b)(l); U.S. v. Raddatz, 447 U.S. 667,

673-74(l980); Roland v. Johnson, 856 F.2d 764, 769 (6th Cir. l988); U.S. v. Shami, 754 F.2d

670, 672 (6th Cir. l985); E.E.O.C. v. Keco Industries, Inc., 748 F.2d l097, ll02 (6th Cir. l984);

Hill v. Duriron Co., 656 F.2d 1208, 1214 (6th Cir. l98l).  Failure to do so constitutes reversible

error.  Keco Industries, 748 F.2d at 1102.  In conducting a *de novo* review, the judge is free to

accept, reject, or modify any of the magistrate's findings and recommendations.  28 U.S.C.

§636(b)(l);  Raddatz, 447 U.S. at 673-74, 680.


## V.  Discussion

### A.  Custody

A petitioner must be "in custody" in order to pursue a writ of habeas corpus.  28 U.S.C.

§§ 2241(c)(3), 2254(a).  "The custody requirement of the habeas corpus statute is designed to

preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty."

Hensley v. Mun. Court, 411 U.S. 345, 351 (1973)  Habeas corpus, however, is not restricted to

cases in which the petitioner is in actual, physical custody.  Justices of Boston Mun. Court v.

Lydon, 466 U.S. 294, 300 (1984).  Thus, a petitioner released on personal recognizance is in custody for purposes of federal habeas corpus.  Id.; Hensley, 411 U.S. at 353.  In determining whether a habeas petitioner has satisfied the custody requirement, courts examine whether the petitioner is subject to a significant restraint on his liberty not shared by the public generally. Hensley, 411 U.S. at 351.

      In his report and recommendation, the Magistrate Judge referred to petitioner as having been "released pending retrial."  Respondent disputes this statement, arguing that petitioner has not been released pending retrial because she was never in custody in the first place.  He contends that at no time was petitioner required to offer the trial court any kind of assurance that she would appear to answer the charges against her.  Respondent maintains that if the Magistrate Judge's position is followed, then the mere existence of a pending criminal charge would satisfy the habeas custody requirement.  Petitioner does not respond to these arguments.

      In reaching the conclusion that petitioner is in custody, the Magistrate Judge found that the instant case is analogous to Lydon and Hensley, in which the Court determined that the petitioners, who were released on personal recognizance, were in custody for purposes of federal habeas.  In Hensley, the habeas petitioner was released on personal recognizance pending execution of his sentence.  His release was subject to the conditions that he would appear when ordered by the court, that he would waive extradition if he was apprehended outside the state, and that the court could revoke the order of release and return the petitioner to confinement or require him to post bail.

      In Lydon, the habeas petitioner, having been found guilty in a bench trial, was released pending the trial before a jury.  He was obligated to appear for trial.  Failure to appear would

have constituted a criminal offense.  Moreover, failure to appear for the jury trial could have

resulted in the imposition of a two-year sentence without further trial.  Lastly, the habeas

petitioner in <u>Lydon</u> was required not to leave the state without permission, and to obey the law.

The Magistrate Judge noted that in the instant case petitioner must appear in court when

summoned to do so, and that if she fails to appear, she may be held in contempt of court and be

fined or arrested.  Ohio Rev. Code § 2935.11.  The Magistrate Judge further pointed out that if

habeas relief is not available, petitioner will be retried, which may be in violation of her Fifth

and Fourteenth Amendment rights.

Inasmuch as the imposition of a fine does not constitute custody, it follows that the threat

of a fine under Ohio Rev. Code § 2935.11 does not satisfy the custody requirement in the instant

case. <u>See</u>, <u>e.g.</u>, <u>United States v. Michaud</u>, 901 F.2d 5, 6-7 (1st Cir. 1990)(fine does not satisfy

custody requirement for § 2255); <u>Tinder v. Paula</u>, 725 F.2d 801, 803 (1st Cir.1984)("fine only"

convictions do not satisfy custody requirement); <u>Obado v. New Jersey</u>, 328 F.3d 716, 718 (3d

Cir. 2003)(fines and restitution do not satisfy custody requirement); <u>United States v. Watroba</u>, 56

F.3d 28, 29 (6th Cir.1995)(fine not sufficient restraint on liberty to constitute custody for §

2255); <u>Moore v. Nelson</u>, 270 F.3d 789, 792 (9th Cir. 2001)(sentence of  "fine only" does not

satisfy custody requirement).

In addition, the Court in <u>Lydon</u> stated:

> We do not carve out a special-purpose jurisdictional exception for double
> jeopardy allegations with respect to custody.  Nothing in our discussion of
> custody is dependent upon the nature of the claim that is raised.  To the extent
> that double jeopardy claims are treated differently for habeas purposes, it is
> because of the exhaustion principle, not because a different definition of custody
> is adopted.

<u>Lydon</u>, 466 U.S. at 302 n. 2.  Hence, the custody requirement is not relaxed merely because

petitioner in this case presents a double jeopardy claim.  As a corollary, it would be improper to
ignore or alter the custody requirement on the basis that, due to the nature of petitioner's double
jeopardy claim, no remedy besides federal habeas is available.  The Court is unaware of any
authority – and petitioner has not presented any – to the effect that unavailability of a remedy is
considered in determining whether a petitioner has satisfied the custody requirement.

The question becomes, then, whether being required to appear for trial, under threat of
arrest, constitutes a restraint of liberty of sufficient to be deemed custody for purposes of federal
habeas corpus.  The petitioners in Lydon and Helsley were subjected to more severe restraints
than petitioner in the instant case.  Nonetheless, the Court in Hensley recognized that the
petitioner's inability to "come and go as he pleases" was, by itself, a significant restraint on his
liberty.  411 U.S. at 351.  Moreover, two federal circuit courts have recognized that a sentence
requiring a defendant's physical presence at a particular place is a significant restraint on liberty
not shared by the public generally.  Barry v. Bergen Cty. Probation Dept., 128 F.3d 152, 160 (3d
Cir. 1997)(community service obligation satisfied custody requirement); Dow v. Circuit Court of
the First Circuit, 995 F.2d 922, 923 (9th Cir. 1993)(sentence requiring attendance at fourteen-
hour alcohol rehabilitation program satisfied custody requirement).

Petitioner is subject to an order requiring her to appear at a particular place and time for
retrial.  If petitioner fails or refuses to appear, she will be arrested and compelled to appear.
Under the above authorities, the Court finds that petitioner is subject to significant restraints on
her liberty not shared by the public generally.  Petitioner is therefore in custody for purposes of
federal habeas corpus.

Respondent argues that under this ruling anyone charged with a crime would be deemed

13

in custody.  Respondent's apparent "floodgates" argument is not well-taken.  As the Court in

<u>Hensley</u> observed, state criminal defendants in this position must still satisfy the exhaustion

requirement before they may seek relief in federal court.  <u>Hensley</u>, 411 U.S. at 353.

For the above reasons, the Court overrules respondent's objection to the Magistrate

Judge's ruling that petitioner satisfied the custody requirement.

### B.  Manifest necessity for mistrial

### 1.  Objections to factual findings

Respondent asserts that the Magistrate Judge erroneously concluded that the parties

stipulated that Thompson died as a result of being crushed by her car.  Respondent similarly

argues that there was no evidence in the record to support the Magistrate Judge's conclusion that

Thompson was crushed to death.  Although respondent is correct with respect to the stipulation,

the Court holds that the Magistrate Judge's error was harmless.  The uncontroverted testimony of

prosecution witness Jeffrey Laine established that Thompson was thrown from her Tracker and

that the vehicle then rolled on top of her.  Tr. at 13.  Laine stated that he helped roll the Tracker

off Thompson following the accident.  <u>Id.</u>  Laine further testified that the vehicle was roof down

on top of Thompson and that the vehicle's roll bar was lying across Thompson's chest.  Tr. at 22.

Prosecution witness Deputy Steve Fickenworth stated on direct examination that after he arrived

to investigate the accident, he was told that the Tracker had been rolled off the person trapped

underneath it.  Tr. at 50.  The Court finds that it is reasonable to infer from this evidence that

Thompson was crushed to death.  In any event, whether Thompson was crushed to death is not determinative of the issues presented in this habeas action.

Respondent also contends that the Magistrate Judge erred in concluding that the jury "inevitably" would have inferred from evidence presented by the prosecution that Thompson was not wearing her seat belt.  Respondent points out that a rational trier of fact could just as easily have believed that Thompson was ejected from her car as a result of seat belt failure.

In reaching the conclusion that the jury inevitably would have inferred that Thompson was not wearing her seatbelt, the Magistrate Judge relied on the Laine's testimony that Thompson was ejected from her car, Tr. at 13, as well as Laine and Fickenworth's testimony that the car came to rest on top of Thompson.  Tr. 13, 22, 50.  The Magistrate Judge also referred to the testimony of prosecution witness Douglas Shoemaker, who stated that he saw that Thompson's hands "were airborne." Tr. at 172.  The Magistrate Judge further relied on photographs of the interior of Thompson's car, which presumably would have shown the seatbelt intact.  Tr. at 142-44, Defendant's Exhibits A-11, 12.  The photographs, however, apparently were not shown to the jury, and in any event the photographs are not a part of the record before this habeas Court.

The Court does not agree that the jury would "inevitably" have inferred from this evidence that Thompson was not wearing her seat belt.  After all, both the trial court and the prosecutor may have overlooked this inference.  The Court nonetheless finds that it was highly likely that one or more jurors would have drawn such an inference.

Respondent also argues that the jurors could just as easily have inferred from the evidence that Thomson's seatbelt malfunctioned.  But an inference of seatbelt failure would have

had the same prejudicial impact on the prosecution's case: the jurors would have been faced with yet another possible cause for Thompson's death for which they might be unwilling to hold petitioner responsible.  In this sense, the Magistrate Judge's conclusion that, in effect, the cat was already out of the bag on the issue of causation, was correct regardless of the potential inference of seatbelt malfunction.

In sum, the Court overrules respondent's objections to the Magistrate Judge's factual findings.

### 2.  Objections to legal conclusions

Respondent asserts that the Magistrate Judge failed to afford the trial court's decision the deference it was due under the AEDPA.  The Magistrate Judge found that the trial court's decision to grant a mistrial was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

The overarching constitutional principle applicable to the instant case is that absent manifest necessity for a mistrial, retrial following a mistrial violates the defendant's Fifth Amendment right not to be twice put in jeopardy for the same offense.  See Arizona v. Washington, 434 U.S. 497. 503, 505 (1978).  In Arizona, defense counsel argued during his opening statement that in an earlier trial the prosecutor had purposely withheld exculpatory evidence from the defense.  The prosecutor moved for a mistrial.  The trial court denied the motion, and deferred ruling on whether evidence of the prosecutor's earlier misconduct would be admissible at trial.  The jury then began hearing evidence.

The next morning, the prosecutor renewed the motion for mistrial, arguing that a curative

instruction would not repair the prejudice to the prosecution and that a mistrial was a manifest necessity.  Defense counsel was not prepared to argue the evidentiary issue, but contended that a curative instruction would avoid any prejudice.  The trial court granted the mistrial.  In doing so, it did not expressly find "manifest necessity."  The federal district court granted the writ of habeas corpus.  The Ninth Circuit Court of Appeals affirmed.  The Supreme Court reversed the judgment of the court of appeals.  Arizona, 434 U.S. at 517.

The Supreme Court in Arizona recognized a criminal defendant's "valued right" to have a trial completed by a particular tribunal. 434 U.S. at 503.  The Court provided three reasons why a second prosecution may be grossly unfair: (1) it increases the financial and emotional burden on the defendant; (2) it prolongs the period of stigmatization; and (3) it may enhance the risk that an innocent person may be convicted.  Arizona, 434 U.S. at 505.  For these reasons, the prosecution is generally afforded one, and only one, opportunity to present his case to a jury.  Id.

Nonetheless, a defendant's valued right to have a trial concluded before a particular jury is at times subordinate to the public's interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.  Id.  In light of the importance of the defendant's valued right, the prosecutor bears a "heavy burden" of demonstrating manifest necessity for a mistrial.  Id.  There must be a "high degree" of necessity present before a mistrial is appropriate.  Id. at 506.

Although the degree of necessity required for a mistrial is high, the Court repeatedly emphasized that the state trial court's determination that the impartiality of jurors may have been affected is not to be lightly overturned.  Thus, the trial court's finding of potential juror bias is entitled to "special respect," "the highest degree of respect," and "great deference."  Arizona,

434 U.S. at 510, 511, 514.  The trial court is entitled to such deference because the trial judge, unlike the reviewing court, actually saw and heard the juror's during *voir dire*, and was in a position to observe the reaction of jurors to the circumstances that gave rise to the motion for mistrial.  Id. at 513-14.  The Court recognized that while a trial judge may chose to instruct the jury o disregard the improper argument or evidence, a curative instruction may not necessarily remove the risk of bias.  Id. at 512-13.

A trial court considering a motion for mistrial must consider "'the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'"  Id. at 514 (quoting United States v. Jorn, 400 U.S. 470, 486 (1971)).  To protect this interest, reviewing courts must satisfy themselves that the trial court has exercised "sound discretion" in declaring a mistrial.  Id. Hence, if a trial judge has acted irrationally or irresponsibly, his action will not be upheld.  Id.

Applying these principles to the facts of the case, the Court in Arizona noted that the trial judge had not acted precipitously; rather he showed concern for the potential double jeopardy consequences of an incorrect ruling.  434 U.S. at 515.  The trial judge therefore gave counsel for both sides a full opportunity to explain their positions.  Id. at 515-16.  From this, the Court concluded that the trial judge had exercised sound discretion.  Id.  The Court added that neither party has a legitimate interest in having a case decided by a jury that may be tainted with bias. Id.  Lastly, the Court held that the trial court is not constitutionally required to use the phrase "manifest necessity" in its decision.  Id. at 517.

Turning to the instant case, the Magistrate Judge pointed out several aspects of the trial court's decision-making process that were consistent with Arizona.  First, the Magistrate Judge

18

acknowledged that the trial court gave both the prosecution and the defense a full opportunity to explain their positions on the mistrial issue.  In addition, although the length of time of the recess was not recorded, the trial court took the time to consult the court's director of legal research and two other judges.  Furthermore, the trial court did not unreasonably hurry the prosecutor into making a decision on whether to request a mistrial or a curative instruction.  Moreover, the Magistrate Judge concluded from the trial judge's comments "that he took the matter seriously, did not act lightly, and acknowledged the importance to the defendant of proceeding to a verdict and getting the matter behind her."  Report and Recommendation (Doc. 6) at 19.

The Magistrate Judge nevertheless found that the trial court's decision to grant a mistrial was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court.  The Magistrate Judge's analysis is twofold.  First, the Magistrate Judge found that the prosecution's argument that the bell could not be unrung failed to meet its heavy burden of demonstrating manifest necessity for the mistrial.  The Magistrate Judge concluded that when Khalipour testified that he thought Thompson did not have her seat belt on, the jurors were already aware from prior testimony that Thompson had not been wearing her seatbelt.  The Magistrate Judge stated that the bell first rang before Khalipour testified.

Second, the Magistrate Judge concluded that a curative instruction would have "preserved for both the prosecution and the defense a level playing field and have accorded them the opportunity to have the empaneled jury deliver a fair and impartial verdict in accordance with the law."  Report and Recommendation (Doc. 6) at 23.  The Magistrate Judge observed that had the trial court recessed the trial for the afternoon, counsel would have been prepared to present reasoned arguments based upon the law governing mistrials.  The Magistrate Judge

opined that if a longer recess had been taken, counsel would have had time to craft a curative

instruction for the trial court to consider.  Id. at 19.

In considering the issue of a curative instruction, the Magistrate Judge examined the

model Ohio jury charge on causation:

> CAUSE. The state charges that the act or failure to act of the defendant caused the
> death of [Joanne M. Thompson]. Cause is an essential element of the offense.
> Cause is an act or failure to act which in a natural and continuous sequence
> directly produces the death, and without which it would not have occurred.
>
> NATURAL CONSEQUENCES. The defendant's responsibility is not limited to
> the immediate or most obvious result of the defendant's act or failure to act. The
> defendant is also responsible for the natural and foreseeable consequences that
> follow, in the ordinary course of events, from the act or failure to act.
>
> OTHER CAUSES NOT A DEFENSE. There may be one or more causes of an
> event. However, if a defendant's act or failure to act was one cause, then the
> existence of other causes is not a defense.
>
> INTERVENING CAUSES. The defendant is responsible for the natural
> consequences of the defendant's unlawful act or failure to act, even though death
> was also caused by the intervening act or failure to act of another person or
> agency.

Ohio Jury Instructions, §§ 409.55 and 409.56.  The Magistrate Judge concluded that the trial

court could have given an additional charge to the jury that Thompson's failure to wear a seat

belt was not a legal "cause" of her death, and that the jury could not consider evidence that

Thompson was not wearing her seat belt in determining whether the State had proven beyond a

reasonable doubt that petitioner caused her death.  Report and Recommendation (Doc. 6) at 22.

The Magistrate Judge found a "close fit" between the model charge on cause and the curative

instruction.  Id. at 23.  In reaching his conclusion that the writ should be granted, the Magistrate

Judge relied in part on Harpster v. Ohio, 128 F.3d 322, 330 (6th Cir. 1997) for the proposition

that when a curative instruction would be sufficient to guarantee both the prosecution and

defense a fair trial, there is not manifest necessity for a mistrial.

The Court will proceed to review these conclusions *de novo.* The AEDPA standard of review governs this case.  The AEDPA provides in part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "Clearly established federal law" can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta.  Williams v. Taylor, 529 U.S. 362, 412 (2000);  Ruimveld v. Birkett, 404 F.3d 1006, 1010 (6th Cir. 2005).  Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." Ruimveld, 404 F.3d at 1010 (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court.  Williams, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

An incorrect state court decision may not be unreasonable under this standard. Id. at 410-11.

For this reason, a federal habeas court may not find a state court's decision unreasonable "simply

because that court concludes in its independent judgment that the relevant state court decision

applied clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the

federal court must determine that the state court decision is an objectively unreasonable

application of federal law.  Id. at 410-12.  "This standard generally requires that federal courts

defer to state-court decisions."  Strickland v. Pitcher, No. 03-2113, 2006 WL 68438, at * 4 (6th

Cir. Jan. 10, 2006) (citing Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells

federal courts: Hands off, unless the judgment in place is based on an error grave enough to be

called unreasonable.")).  The "unreasonable" requirement is a high bar.  Ruimveld v. Birkett,

404 F.3d 1006, 1010 (6th Cir. 2005).

The Court will first examine whether the trial court's decision was contrary to clearly

established federal law.   The trial court did not reach a conclusion opposite to that reached by

the Supreme Court.  Moreover, the Court is not aware of, and petitioner has not directed the

Court's attention to, any Supreme Court decision that is materially indistinguishable on the facts.

It therefore cannot properly be said that the trial court's decision to grant a mistrial was contrary

to clearly established federal law as determined by the Supreme Court.

The next question is whether the trial court's decision involved an unreasonable

application of clearly established federal law.  The Court has found that it was highly likely that

by the time Khalipour testified, one or more jurors were already aware that Thompson was not

wearing her seatbelt at the time of the accident.  Hence, any prejudice arising from Khalipour's

testimony had already occurred in the prosecution's case. Khalipour testified that petitioner's car "tapped" the back of Thompson's Tracker. His testimony was therefore quite favorable to the defense. To allow a trial court to grant a mistrial in the midst of testimony favorable to the defense, where the prejudice to the prosecution that forms the basis for the mistrial had already taken place during the prosecution's case, would invite the kind of "abhorrent" practice that gave rise to the protection against double jeopardy. See Arizona, 434 U.S. at 507-08. The Court agrees with the Magistrate Judge that the trial court's failure to recognize and consider that the jurors were already aware that Thompson was not wearing her seatbelt involved an unreasonable application of clearly established federal law as well as an unreasonable determination of the facts upon which the trial court granted the mistrial. 28 U.S.C. § 2254(d).

The remaining issue is whether the trial court unreasonably applied clearly established federal law when it failed to consider or give a curative instruction instead of declaring a mistrial. This question requires the Court to first examine whether clearly established federal law required a trial court to consider and give a curative instruction when doing so would ensure a fair trial. The Court is unaware of any Supreme Court decision with such a holding. Nonetheless, the Court finds that such a principle logically flows from Supreme Court precedent, including Arizona, which stresses the importance of a defendant's "valued right" to have his trial completed by a particular tribunal, and the "high degree" of necessity required to overcome that right. See 434 U.S. at 503-06. Thus, clearly established federal law required a trial court to consider whether alternatives to a mistrial would ensure a fair trial before an impartial jury to both the prosecution and defense.

The Court agrees with the Magistrate Judge's assessment that a curative instruction along

with a modified charge on causation would have eliminated the threat of unfair prejudice to the prosecution.  The record is devoid of any indication that the trial court gave serious consideration to such an instruction.  The Court finds that the trial court's decision to grant a mistrial without adequately considering a curative instruction involves an unreasonable application of clearly established federal law.

For the above reasons, the Court overrules respondent's objection to the Magistrate Judge's legal conclusion that the trial court's decision to grant a mistrial involved an unreasonable application of clearly established federal law as determined by the Supreme Court.


## VI.  Disposition

Based on the above, the Court **OVERRULES** respondent's objections to the Magistrate Judge's report and recommendation.  The Court **ADOPTS** the Magistrate Judge's report and recommendation in its entirety.

The Court **GRANTS** the petition for a writ of habeas corpus.

The Clerk shall enter a final judgment this action granting the writ of habeas corpus in favor of petitioner, and barring respondent from retrying petitioner on the charge of vehicular manslaughter arising from the accident that occurred on July 1, 2003.

The Clerk shall remove Doc. 7 from the Court's pending CJRA motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

 **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

24